UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE J.P. MORGAN CHASE CASH BALANCE     :
LITIGATION                                 :       **06 Civ. 732 (HB)**
--------------------------------------------------------------- :
THIS DOCUMENT RELATES TO:        :       <u>**OPINION & ORDER**</u>
                                         :
All Actions                                :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Neil Aldoroty, John J. Berotti, Annette Marie Falchetti, Terri Melli, Norman J.
Schomaker, and Perry Shapiro (collectively, "Plaintiffs") allege that the JPMorgan Chase
Retirement Plan ("Plan") implemented by JPMorgan Chase ("JPMC") violates the Employee
Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.* In
Count I, the Plaintiffs allege that the JPMC Plan is age discriminatory. Plaintiffs have
withdrawn Count II ("backloading," i.e. postponing benefits)[1] and Count III ("forfeiture")[2]
without prejudice and reserve their rights to reinstate these claims during discovery. In Counts
IV – VI, Plaintiffs allege, respectively, that JPMC and JPMC's Director of Human Resources
(collectively, "Defendants") failed to provide notice that the rate of their future benefit accrual
would decrease under the new plan, did not provide an adequate Summary Plan Description
("SPD"), and did not provide summaries of material modifications to the Plan. Defendants have
filed a motion to dismiss all remaining counts of the Consolidated Complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6), failure to state a claim. Defendants also contend that Counts
IV-VI, should be dismissed pursuant to Federal Rule of Civil Procedure 8(a), failure to plead
with particularity. For the reasons set forth below, this motion to dismiss is granted in part and
denied in part.

**I.      FACTUAL BACKGROUND**

*A. Background on ERISA Retirement Plans*

      ERISA provides for two types of pension plans and labels them defined-contribution or
defined-benefit plans. The categorization of a retirement plan as either a defined-contribution
plan or a defined-benefit plan is critical because the plans are subject to different requirements

---

[1] Count II claimed that the transition from a final average pay formula to the cash balance formula created an
impermissible "wear-away" of benefits, in violation of ERISA § 204(b)(1)(B).
[2] Count III claimed that the transition from a final average pay formula to the cash balance formula created an
impermissible forfeiture of accrued benefits, in violation of ERISA § 203(a)(2)(A).

under ERISA.

ERISA sets forth a narrow definition for defined-contribution plans.  Pursuant to the law, a defined-contribution plan is one where the employer periodically contributes a certain amount of money (e.g. 3% of the employee's salary) into each employee account.  ERISA Section 3(34), 29 U.S.C. § 1002(34) ("A pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses.").  Under defined-contribution plans, the employer does not guarantee a retirement benefit to the employee.  The employee bears the risk of any investment, even if the investment reduces the amount in their retirement account.  A common type of defined-contribution plan is a 401(k) plan.  The employer makes contributions to the employee's account but does not guarantee any benefit upon retirement.

In contrast, a defined-benefit plan is one where the employee is promised a retirement benefit based on a formula set forth in the plan.  Under ERISA, defined-benefit plans include all plans that do not meet the definition of a defined-contribution plan.  ERISA Section 3(35), 29 U.S.C. § 1002(35) (stating that a defined-benefit plan is "a pension plan other than an individual account plan.").  One type of defined-benefit plan is a final pay formula plan.  In simplified terms, under a final pay formula plan, employees are guaranteed a retirement benefit that is calculated on a percentage of the employee's salary during their final years of employment.

Cash balance plans combine features of both defined-benefit and defined-contribution plans.  Under a cash balance plan, not only does an employer guarantee an employee a benefit upon retirement, but the employer also makes contributions to a hypothetical account on behalf of the employee.  In this Circuit, cash balance plans fall under the defined-benefit plan umbrella, subject to the regulations that govern those plans and "[t]he regulatory consequences of this classification are wide-reaching."  Esden v. Bank of Boston, 229 F.3d 154, 158 (2d. Cir. 2000).  In Esden, the Second Circuit explained that

> However 'hybrid' in design a cash balance plan may be, it remains subject to a regulatory framework that is in many regards rigidly binary.  Because the individual accounts, and the employer contributions and the interest credits to those accounts, are all hypothetical under a cash balance plan, it is classified as a defined-benefit plan.

Id.

*B. JPMC's Cash Balance Plan*

In a Rule 12(b)(6) motion, the allegations in the plaintiff's complaint are taken as true. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  The Plaintiffs recount the following in their Consolidated Class Action Complaint.

JPMC is the successor-in-interest to several other companies, including The Chase Manhattan Bank ("Chase"), Chemical Banking Corporation ("Chemical"), Manufacturers Hanover Trust ("MHT"), J.P. Morgan & Co., Inc. ("J.P. Morgan"), and Bank One (collectively, "JPMC Predecessor Companies").  Corrected Consolidated Class Action Complaint ("Compl.") ¶ 15.  Each of these Predecessor Companies had a defined-benefit pension plan prior to merger with J.P. Morgan.  Compl. ¶ 28.  The last conversion occurred in 1998, with an effective date of January 1, 1999.  Compl. ¶ 35.  The Plan at issue, effective January 1, 2002, is the result of the union of, and amendments to, the various retirement plans of the JPMC Predecessor Companies. Compl. ¶¶ 28, 40.

The current JPMC Plan is a cash balance plan.  Compl. ¶ 20; See generally Esden v. Bank of Boston, 229 F.3d 154, 158 (2d Cir. 2000) (description of cash balance plans).  Under the Plan, pension benefits are calculated using the cash balance formula which commands that an employer set up a hypothetical or notional account ("Account") in the participant's name. Compl. ¶ 21.  The Account is simply a recordkeeping device.  A participant's Account accumulates benefits based on two factors – Pay Credits and Interest Credits.  Id.  The Pay Credit, a percentage of the individual's annual salary based on the participant's completed years of service, is a contribution the employer makes to the Account.  Compl. ¶¶ 44, 45.  As years of service accumulate, a higher percentage of the individual's compensation is deposited into the hypothetical Account by the employer.  Id.  Interest Credits, a variable interest rate based on an outside index, are also allocated to the Account.  Compl. ¶ 47.  The Interest Credit, while the rate itself may vary, is the same for all employees.  Once the employee leaves the company, Pay Credits no longer accumulate to the account.  However, Interest Credits continue to be allocated to the Account until the employee decides to receive the benefit.

After five years of participation in the Plan, the benefits in the hypothetical Account vest. At that point (and any time thereafter until the age of 70½), an employee can elect to receive their retirement benefit in one lump sum payment or in an annuity.  The Account must be converted into a dollar benefit based on actuarial assumptions in the Plan before it is paid over to

the employee.  Compl. ¶ 23.  In other words, an employee's retirement benefit is determined by the value of the Interest and Pay Credits in the Account.

All Plaintiffs are former employees of JPMC (or one of its Predecessor companies) and are subject to the JPMC cash balance formula.  Compl. ¶¶ 9 -14.  Plaintiffs claim that retirement benefits calculated under the cash balance plan are age discriminatory.

## II.     STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the movant must establish that the plaintiff failed to "state a claim upon which relief can be granted."  FED. R. CIV. PRO. 12(b)(6).  In ruling on a Rule12(b)(6) motion, this Court must construe all factual allegations in the complaint in favor of the non-moving party.  See Krimstock v. Kelly, 306 F.3d 40, 47 - 48 (2d Cir. 2002).  The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## III.     DISCUSSION

### A.  Procedural Claims

As a preliminary matter, the Defendants assert two procedural arguments and contend that one, or both, require dismissal of this Complaint.  For me, at this time, both arguments are unavailing.

### 1.  Failure to Exhaust Administrative Remedies

Defendants claim that the Plaintiffs failure to plead that they exhausted the administrative remedies related to these claims merits dismissal.  Although there is a federal policy that favors exhaustion of administrative remedies in ERISA actions, Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993), there is no statutory exhaustion requirement under an ERISA claim brought by a participant who files a civil action to clarify their rights to future benefits under the Plan.  Pease v. Hartford Life Accident Ins. Co., 449 F.3d 435, 445 (2d Cir. 2006).

*2.  Statute of Limitations*

Defendants state that the Plaintiffs' claims are time-barred to the extent that they deal with the provision of benefits or communications before 1999.  ERISA does not provide a statute of limitations for civil enforcement actions, 29 U.S.C. § 1132, thus, the most similar state statute of limitations applies.  Miles v. N.Y. State Teamsters Conf. Pensions & Retirement Fund Employee Pension Benefits Plan, 698 F.2d 593, 598 (2d Cir. 1983).  Employee benefit plans are contracts, accordingly, under New York law, the applicable statute of limitations is six years. N.Y. C.P.L.R. § 213.

The Second Circuit has held that the six-year statute of limitations does not begin to run until "there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiaries."  Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001).  The statute of limitations period typically begins when a participant's formal application for benefits is denied by the plan.  Lewis v. John Hancock Mut. Life Ins. Co., 6 F.Supp.2d 244, 247 (S.D.N.Y. 1998).  In some circumstances, the time period may begin earlier.  Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 47-48 (2d Cir. 1999) (finding that a participant's receipt of a plan amendment or letter, before the submission of a formal application for benefits, may also trigger the statute of limitations).  Based on the facts set forth by the Plaintiffs in the Consolidated Complaint, it is uncertain when it became clear to them that JPMC had "repudiated" the benefits they were entitled to under the previous retirement plan.

Defendants argue that "repudiation" occurred when JPMC converted the pension plan from a traditional defined-benefit plan to a cash balance plan.  Since the last cash balance plan conversion occurred in December 1998, Defendants conclude that the claims here are time-barred since the Complaint was filed more than six years thereafter, in January 2006.

While this may be true, the Defendants fail to recognize that this is two-step inquiry.  Not only must there be a repudiation by the fiduciary but the repudiation must be "clear and made known to the beneficiaries."  Plaintiffs allege that JPMC failed to provide adequate notice with respect to the decrease in their retirement benefit as a result of the conversion to a cash balance plan.  Thus, it appears that Plaintiffs argue that they were unaware of the reduction in their retirement benefits that resulted from the cash balance conversion until they left JPMC.

While receipt of a SPD from the Plan may be sufficient notice, there are no assurances that this is so. Taking the Plaintiffs allegations as true, there are issues of fact with respect to

when the Plaintiffs were notified about the effect on their retirement benefit as a result of the cash balance conversion and whether the statute of limitations was triggered upon receipt of this notice.  Thus, construing the facts in their favor as I must on a motion to dismiss, the statute of limitations was not triggered until 2001, since it was then (and after) that any named plaintiff left the employment of JPMC.  Given that the initial complaint in this matter was filed in January 2006, well within the six-year statute of limitations, the motion to dismiss will not be granted on this basis as to any of the claims.

### B. Age Discrimination Claim (Count I)

Presently, two district courts in this Circuit have found that cash balance plans are not age discriminatory, Laurent v. PriceWaterhouseCoopers, LLP, --- F.Supp.2d ----, 2006 WL 2546805 (S.D.N.Y. 2006), Hirt v. Equitable Ret. Plan for Employees, Managers & Agents, 441 F.Supp.2d 516 (S.D.N.Y. 2006), and one has come out the other way, Richards v. Fleet Boston, 427 F.Supp.2d 150 (D.Conn. 2006).  I join the court that found that cash balance plans are age discriminatory, although I reach this conclusion via a different path.  In short, I find that the unambiguous statutory language, as well as ERISA's different regulatory requirements for defined-contribution and defined-benefit plans, compels this result.

The crux of this case depends on how you interpret the ERISA anti-age discrimination provision, § 204(b)(1)(H)(i), for defined-benefit plans.  The age discrimination test for defined-benefit plans and defined-contribution plans is set forth below, side-by-side.

| Defined-benefit Plan – 29 U.S.C. § 1054(b)(1)(H)(i) | Defined-contribution Plan – 29 U.S.C. § 1054(b)(2)(A) |
| --- | --- |
| A defined-benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the *rate of an employee's benefit accrual* is reduced, because of the attainment of any age. | A defined-contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age. |

*1. ERISA Age-Based Accrual Provisions Are Applicable Before Normal Retirement Age*

Although neither party raised this argument here, there is a split among courts as to whether ERISA's age-based accrual provisions apply to individuals younger than 65.  As set forth above, ERISA section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), prevents the reduction of the rate of benefit accrual "because of the attainment of any age."  The unambiguous meaning

of the term "any" dictates the conclusion that the ERISA anti-age discrimination provision applies to individuals of all ages.

A number of courts, even those who eventually conclude that cash balance plans are not age discriminatory, have found that the broad language of the anti-age discrimination provisions, "attainment of any age," favor the application of these provisions before and after normal retirement age.  See, e.g., Hirt, 441 F.Supp.2d at 550 ("The application of the age discrimination prohibition contained in section 204(b)(1)(H) of ERISA to workers of all ages is, in my opinion, the necessary consequence of the broad language employed by the statute); Register v. PNC Financial Servs. Group, 2005 WL 3120268, at *7, n. 17 (E.D. Pa. Nov. 21, 2005) ("The [IRS 2002] proposed regulations emphatically reject the first holding in *Eaton*, that the age discrimination provisions only apply after normal retirement age.").  Since the statutory language "attainment of any age" is unambiguous, I join the courts that conclude that plain language of the anti-discrimination provisions dictate that its prohibitions apply at any age.

2.  *Definition of "Rate of Benefit Accrual"*

ERISA's age discrimination provision prohibits the reduction of the rate of an employee's benefit accrual on account of age.  The definition of the phrase "rate of an employee's benefit accrual," used only in the age-discrimination provision for defined-benefit plans, is central to this analysis.  Specifically, whether this phrase refers to the employer's contributions to the plan (inputs) or the employee's retirement benefit (outputs).  Defendants argue for the former interpretation whereas the Plaintiffs argue for the latter.

In other words, Defendants argue that the ordinary meaning of "rate of benefit accrual" suggests that as long as the rate at which payments (i.e. pay credits and interest credits) made to the employee's account does not decrease from one year to the next, no violation exists.  Put another way, the employer's contributions to the account are the relevant "benefit" in this paradigm.  Thus, if the employer makes ever-increasing contributions to the account, $100, then $120, etc., there is no ERISA violation.  Plaintiffs contend, however, that the relevant "benefit" is what an employee receives from the hypothetical account in the form of a retirement benefit, the actuarial equivalent of the employer's contributions to the account.  Thus, in order to avoid an ERISA violation, an employer must ensure that the rate at which an employee accumulates their retirement benefit increases as the individual gets older.

"Rate of benefit accrual" is not defined in the ERISA statute or any regulation, but since

under a defined benefit plan an employee is promised a retirement benefit, not employer contributions to a retirement account, the import of the statutory language suggests that "rate of benefit accrual" refers to the outputs from the Plan.  As mentioned in section I.A. above, this is the critical distinction between defined-benefit and defined contribution plans.  Under a defined benefit plan, employees are promised an output, retirement benefits, whereas under a defined contribution plan, employees are only promised an employer contribution to an account – benefits are not guaranteed.  The binary regulatory framework with regard to defined-contribution and defined-benefit plans compels differing treatment for the two plans.

The parties agree that the phrase, "rate of benefit accrual," is unambiguous and I agree. See Def. Mot. to Dismiss at 10 ("The phrase [rate of benefit accrual] therefore should be interpreted in accordance with the ordinary meaning of the words used."); Pl. Mot. in Opposition to Def. Mot. to Dismiss at 12-15.  Since the term is not ambiguous, there is no need to consider legislative history to divine Congress' intent.  BedRoc Ltd., LLC v. U.S., 541 US 176, 183 (2004) (internal citations omitted) ("Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); Cf. Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress").  The dictionary definition for benefit and accrual follow.

> Benefit - A payment or service provided for under an annuity, pension plan, or insurance policy
>
> Accrual - To accumulate or be added periodically.

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (1999).  Thus, substituting in the respective definitions, the phrase "rate of benefit accrual" is defined as the rate at which an employee accumulates retirement payments and cannot mean the contributions (credit balance) the employer makes to the employee's hypothetical account.  The plain meaning of the phrase, "rate of benefit accrual," e.g. the employee's retirement payments from the account, is supported by the purpose and structure of defined-benefit plans.

By definition, under a defined-benefit plan, the employee never receives the credit balance in the Account.  Instead, the inputs (contributions and interest credits) the employer makes into the Account must be converted to the age 65 annuity.  Esden, 229 F.3d at 164 ("Because the Plan is a defined benefit plan, any distribution from the plan must be the actuarial

equivalent of the accrued benefit expressed as an annual benefit payable at normal retirement age, that is-otherwise expressed-the normal retirement benefit.").  You must know an individual's age to perform the actuarial calculation.  As a result, the cash balance plan is not age neutral.

The JPMC Plan itself states that participants do not receive the amounts in the notional account as their retirement benefit.  Instead, the Plan dictates that the credit balance in the account must be converted into an accrued benefit before it is paid over to the employee.  JPMC Plan, Vested Benefit at ¶ 5.1 (Jan. 1, 2002) ("A Participant who has completed a Period of Service of at least five years has a nonforfeitable right to 100% of such individual's Accrued Benefit.").  An accrued benefit, as defined by the Plan is the following.

> (i)  an annuity for the life of the Participant (without survivor benefits) at Normal Retirement date, that is the Actuarial Equivalent of the Participant's Credit Balance.

JPMC Plan, Definitions at ¶ 1.2 (Jan. 1, 2002).  Unsurprisingly, this description is the same as ERISA's accrued benefit definition for defined-benefit plans.[3]  The Second Circuit explained that this actuarial conversation requires "projecting the cash balance forward and then discounting back to present value."  Id. at 159.

Although the Esden court was not faced with an age discrimination claim, it recognized and applied the conversion concept in the cash balance plan at issue.  There, the Second Circuit found that the ERISA regulations require that

> Because the Plan [cash balance plan] is a defined-benefit plan, any distribution from the plan must be the actuarial equivalent of the accrued benefit expressed as an annual benefit payable at normal retirement age, that is—otherwise expressed—the normal retirement benefit.

Esden, 229 F.3d at 164.  The Court applied the regulations for defined benefit plans, even in the anomalous situation where the plaintiff elected to collect a lump sum annuity payment before she reached 65 years of age and the lump sum (discounted to present value) distributed to her at that time was more money than was currently in the notional account.  Esden, 229 F.3d at 159-61 (finding that an employer must give an employee the present value of her accrued benefit,

---

[3] ERISA defines accrued benefit, for the purpose of defined-benefit plans, as follows.
  The term "accrued benefit" means ---
  (A)  [I]n the case of a defined benefit plan, the individual's accrued benefit determined under the plan . . ., expressed in the form of an annual benefit commencing at normal retirement age.  29 U.S.C. § 1002(23)(A).

$1,595.52, not the smaller amount in her cash balance account, $1,533.98); <u>See</u> <u>also</u> <u>id.</u> at 165 (citing Treas. Reg. § 1.417(e)-1(d)(1)) ("The present value of any optional form of a benefit cannot be less than the present value of the normal retirement benefit.").

In short, the age discrimination at issue here stems from the required conversion to an age 65 annuity (required because cash balance plans are defined benefit plans) combined with the fact that under the JPMC Plan, JPMC allocates interest credits to the account through normal retirement age. This means that younger workers have more years to earn interest in their hypothetical account. <u>See</u> <u>Esden</u>, 229 F.3d at 170 ("[T]he interest adjustments to a hypothetical allocation [i.e. cash balance account] must be provided through normal retirement age, even though the employee terminates employment or commences benefits before that age."). A worker's age is required to convert the hypothetical account balance into an age 65 annuity, and as a matter of simple arithmetic, this conversion results in a smaller retirement benefit for older workers because they have less years in which to earn interest. This is undisputed by Defendants and was conceded at oral argument.[4] In other words, for similarly situated workers (same salary and work history), the older worker, by definition, will receive a smaller retirement benefit simply because they are older, and thus closer to age 65. Interest credits will accrue to their account for fewer years as compared to the similarly situated younger worker.

Further, the older worker will accrue benefits at a slower rate than the younger worker even though both employees receive the same interest and continue to accrue interest in that account until normal retirement age (age 65). This is simply the result of compound interest. The extra years the younger worker has to earn interest on his retirement benefit grows his money at a faster rate and produces a larger sum when it is converted to an annuity at age 65.[5] Simply put, interest is applied to an ever-increasing principal balance.

Defendants argue that even if you accept the Plaintiffs' contention, the fact that older workers get less money as compared to younger workers is simply a result of older workers

---

[4] The Defendants do not dispute that when you apply the Plaintiffs' method (i.e. looking at the annual benefit an employee gets at age 65), the rate at which benefits accrue decreases with age.

> When you talk about the rate of the accrued, employees' accrued benefit, accrual or accumulation, then, yes, because a 20-year old has 45 years to earn interest through age 65 and because a 50-year old has 15 years, that the accrued benefit will – the total of the accumulations over the longer period for a younger employee will be larger than the accumulation for an older employee.

<u>See</u> Oral Argument Hearing Tr. at 15.

[5] In the case of JPMC's Plan, Plaintiffs allege that the pay credits are not allocated to the account at a rate that can compensate older workers for the fewer years they have to earn interest as compared to younger workers. JPMC Plan ¶¶ 57-58.

having less time to accrue interest on their account as compared to younger workers and that is not age discrimination but instead, a simple reflection and recognition of the time value of money.  While this analysis is fair, it misses the point.  The gravamen here is a question of statutory interpretation, specifically, the meaning of the phrase "rate of benefit accrual."  Participants in a defined benefit plan are promised a benefit upon retirement, not yearly credits in a notional account.  The Plan must know a participant's age to calculate that retirement benefit, which is an age 65 annuity.  The Defendants avoid the consequences that result from the application of compound interest to amounts in the notional Account by their misguided focus on the employer's contributions to the plan as opposed to what the employee receives from the plan.

It is immaterial that the terms of the plan appear age neutral.  Despite the fact that every employee receives pay credits based on their completed years of service and the same interest rate is applied to each employee's account balance, that is not the yardstick by which to test, nor the means to avoid, age discriminatory results pursuant to ERISA section 204(b)(1)(H)(i).  Rather, ERISA's regulatory framework instructs that for defined-benefit plans, it is the retirement benefit with which we are concerned.  Under JPMC's plan, individuals who join the company at a later age receive less.

In sum, under a cash balance plan, all other things being equal, when we focus on the benefit that the employer promises at retirement, (as the statute instructs us to), a worker who begins employment at an older age will receive a smaller retirement benefit as compared with a similarly situated employee who begins work at a younger age, and this is violative of ERISA section 204(b)(1)(H)(i).

*3. Other Courts That Have Ruled on this Issue*

The only Circuit to rule on this issue held that cash balance plans are not age discriminatory and do not violate § 204(b)(1)(H)(i).  See Cooper v. IBM Pension Plan and IBM Corp., 457 F.3d 636 (7th Cir. 2006).  To reach this result, Judge Easterbrook concluded that the age discrimination provisions for defined benefit and defined contribution plans, set out in the table above, "appear to say the same thing."  Id. at 638.  Further, he noted that cash balance plans are "economically equivalent" to defined contribution plans and since the award of interest in defined contribution plans is not age discriminatory, it makes little sense to treat the award of interest as age discriminatory for a defined benefit plan.  Id. ("Interest is not treated as age discrimination for a defined-contribution plan, and the fact that these subsections are so close in

both function and expression implies that it should not be treated as discriminatory for a defined-benefit plan either.").  Put another way, the Seventh Circuit treated cash balance plans as defined contribution plans.

Part of the Seventh Circuit's decision relied on a finding that "'benefit accrual' (for defined-benefit plans) and 'allocation' (for defined-contribution plans) both refer to the employer's contribution." Id. at 639.  Defendants in this case make a similar argument and they argue that Congress was saying the same thing when they used the term "allocation" in one provision and "rate of benefit accrual" in the other.  The fact is accrual, using its dictionary meaning and in line with the structure of defined benefit plans, refers to what the employee accumulates (the outputs from the plan) whereas allocation, using its dictionary definition and in line with the structure of defined contribution plans, refers to what an employer puts into the account.  As this Circuit has observed, "[w]hen Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional." U.S. v. Peterson, 394 F.3d 98, 107 (2d Cir. 2005).  Congress was not prohibited from explicitly stating that age discrimination may be measured via the rate at which employer's allocate funds to the employee's notional account.  They did not do so, and instead used two different words, in two separate provisions in the statute.

It is difficult to imagine that in this case, where Congress has set forth one standard applicable to defined-benefit plans and another standard applicable to defined-contribution plans, they meant both provisions to mean the same thing.  In other places in the statutory scheme when Congress intended the same rule to apply to both defined-benefit plans and defined-contribution plans, they, unsurprisingly, used a single provision.  Compare 29 U.S.C. § 1052(a)(1)(A) (explaining in one statutory provision participation standards that apply to both defined-benefit and defined-contribution plans) with 29 U.S.C. § 1054(b)(1) (anti-discrimination provision for defined-benefit plans) and 1054(b)(2) (anti-discrimination provision for defined-contribution plan).

Furthermore, the district courts that conclude that cash balance plans are not age discriminatory give significant weight to policy arguments – specifically, the fact that the Plaintiffs' position not only fails to comport with the way cash balance plans are structured but also penalizes companies for a progressive approach in awarding interest to employees.  See, e.g., Tootle v. ARINC, Inc., 222 F.R.D. 88, 94 (D. Md. 2004) ("The potential claim of age

discrimination arises only by applying a definition for accrued benefits which does not fit with the way cash balance plans are structured.  The more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance."); See also Hirt, 2006 WL 2023545, at *34 (finding that "[a]ge discrimination does not arise from neutral application of interest to yearly account balances.").  These arguments miss the point since the "dispute it not over what a 'better' regulatory regime, more accommodating to the design objectives of cash balance plans might look like; the dispute is over how to apply the existing regulations to this Plan."  Esden, 229 F.3d at 171.

While these policy arguments appear salutary and give me pause, the statutory text dictates a different result.  The Second Circuit in Esden counseled as much, suggesting that one must adhere to the statutory text and utilize ERISA rules for defined benefit plans when dealing with cash balance plans, despite seemingly anomalous results.

> It is undisputed that the governing statutes and regulations were developed with traditional final-pay defined-benefit plans in mind; they do not always fit in a clear fashion with cash balance plans and they sometimes require outcomes that are in tension with the objectives of those plans.

Esden, 229 F.3d at 159.

Although it appears that this ruling may make it more difficult for companies to construct a cash balance plan that comports with ERISA requirements, Congress, not the Courts, is the place to turn for redress.  The Second Circuit said as much in Esden, "[t]he issue is whether the Plan's terms complied with the law. They did not."  Id. at 172.

Further, the age discrimination arises because this is a defined benefit plan and older workers accrue their retirement benefits at a slower rate than similarly situated younger workers.  As directed by the Supreme Court, my role "is to apply the text, not to improve upon it."  Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989).  That is the province of Congress, and it addressed some of the tensions that arise when the binary statutory framework is applied to cash balance plans at the time they passed the Pension Protection Act of 2006 this summer.[6]

---

[6] The House of Representatives passed the Act on July 28, 2006, the Senate followed suit on August 3, 2006, and President Bush signed the Act into law on August 17, 2006.

*C. Back-loading and Forfeiture Claims (Counts II and III)*

The Plaintiffs have withdrawn these two counts without prejudice, and request the right to reinstate these claims during discovery, if appropriate.

Plaintiffs were given an opportunity to amend their complaint prior to answering the Defendants' motion to dismiss.  They elected to rest on their Consolidated Complaint.  It is unlikely that any further amendments will be permitted following discovery.

*D.  Notice Claims (Counts IV-VI)*

Plaintiffs allege that the conversion to a cash balance plan served as a material modification to the Plan because the conversion decreased their retirement benefits.  Since as a matter of simple arithmetic older workers receive less money because they have less time to accrue interest, I agree with the Plaintiffs.  As a result, I conclude that the allegations that the Plan administrator failed to inform the Plaintiffs about the reduction in their retirement benefits resulting from the conversion to a cash balance plan is separate and distinct from the age discrimination claim.  See also Oral Argument Hearing Tr. at 43:7-10 ("It is misleading for the defendants to suggest the notice claim and the discrimination claim are intertwined and can't be separated.  It is not true.").

Defendants argue that Plaintiffs have not pled with sufficient particularity their lack of notice claims (Counts IV-VI), in violation of Federal Rule of Civil Procedure Rule 8(a).  Under this rule, a complaint need only set forth "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  FED. R. CIV. P. 8(a).  This is a permissive pleading standard and the plaintiff is only required to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 US 41, 47 (1957).  I find that the Plaintiffs have pled enough here.

In Count IV, the Plaintiffs allege that the Defendants did not provide advance written notice that the switch to cash balance plans might result in a "significant reduction in the rate of future benefit accrual."  Pursuant to ERISA section 204(h), 29 U.S.C. § 1054(h), notice must be given at least 15 days before the effective date of an amendment that significantly reduces the rate of future benefit accruals, and they contend that the conversion to a cash balance plan did just that.  In fact, Plaintiffs state in paragraph 88 that ERISA section 204(h) required the Plan to

give them adequate notice of the change to their benefits, and they failed to do so.  Compl. ¶ 88

("Upon information and belief, the timing, content and method of distribution of the notices of

the adoption of the cash balance formulas in the Plan and the Predecessor Plan violated ERISA

Section 204(h), 29 U.S.C. § 1054(h), and the applicable regulations.").  Although Plaintiffs fail

to provide specifics as to how the "timing, content and method of distribution" ran afoul of

section 204(h), they do clearly state that their claim is based on the Defendants failure to inform

them that the switch to the cash balance plan would reduce their retirement benefit.  This is

enough to state a claim under Count IV.

    In Count V, the Plaintiffs allege that JMPC failed to provide participants with a summary

plan description that can be understood by an average plan participant as required by ERISA

Section 102(b), 29 U.S.C. § 1022(b) and 29 C.F.R. § 2520.102-2.  ERISA Section 102(b)

requires the Plan administrator provide all participants with a summary plan description ("SPD")

that sets forth the following.

> The summary plan description shall contain the following information:
> . . . the plan's requirements respecting eligibility for . . . benefits; . . .
> circumstances which may result in disqualification, ineligibility, or
> denial or loss of benefits. . .

29 U.S.C. 1022(b).  The Plaintiffs allege that the following information was omitted from or

insufficient in the Summary Plan description provided to participants.

> In short, the Undated SPD did not explain, inter alia, (a) that the
> rate of accrual under the Plan diminished based on age for all Plan
> participants as a matter of simple arithmetic; (b) that the new cash
> balance formula applied retroactively to all years of service with
> Chase; (c) that the 1997 Opening Cash Balance Account operated
> as an offset against accrual under the new cash balance formula for
> Heritage Chase employees; and (d) that the benefit accrued under
> the 1997 cash balance formula was not applicable to Heritage
> Chase employees until and unless their benefit under the new cash
> balance formula became greater than the 1997 Opening Cash
> Balance Account.

Compl. ¶ 100.

    Further, not only must the Plan administrator provide specific information about the plan,

it must do so in a clear, and easy to understand fashion.  29 C.F.R. § 2520.102-2 ("The format of

the summary plan description must not have the effect [of] misleading, misinforming or failing

to inform participants and beneficiaries.").  While Plaintiffs allege that the various omissions

specified in Complaint paragraph 100 obscured the fact that their retirement benefit would decrease as a result of the conversion, I find there was ample language to state a claim and Count V will not be dismissed.

Finally, in Count VI, the Plaintiffs allege that Defendants failed to provide summaries of material modifications to the Plan as required by ERISA Section 102(a), 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.104b-3. ERISA Section 102(a) provides that

> A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant.

29 U.S.C. § 1022(a). 29 C.F.R. § 2520.104b-3 requires that the Plan administrator disclose these modifications no later than 210 days after the year in which the changes were adopted. Allegations that participants were not notified about the impeding decrease in their retirement benefit under the new cash balance plan was a material change to the plan and had to be disseminated. Failure to notify participants about this change would run afoul of ERISA Section 102(a). This claim will not be dismissed.

## IV. CONCLUSION

For the reasons set forth above, this motion to dismiss is granted in part and denied in part. The motion to dismiss is denied with respect to Count I, the age discrimination claim, and Counts IV-VI, the notice claims, but Counts II and III are dismissed. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**October ___, 2006**

**U.S.D.J.**

16