UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE JP MORGAN CHASE CASH BALANCE LITIGATION | ) ) ) ) ) ) ) | Via ECF<br><br>Master File No. 06-cv-0732 (DLC)(THK) |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | ) ) ) | |
| FRANK BILELLO, individually and on behalf of all others similarly situated,<br><br>Plaintiff;<br><br>v.<br><br>JPMORGAN CHASE RETIREMENT PLAN, JPMORGAN CHASE DIRECTOR OF HUMAN RESOURCES as administrator of the JPMorgan Chase Retirement Plan,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Via ECF<br><br>Civ. No.  07-CV-7379 (DLC)(THK) |

**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, SETTLEMENT CLASS CERTIFICATION, CASE CONTRIBUTION AWARDS TO NAMED PLAINTIFFS AND REIMBURSEMENT OF ATTORNEYS' EXPENSES**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 1

        A.      Summary of the Actions ........................................................................ 1

        B.      Settlement Negotiations and Resulting Settlement Agreement ................. 6

                1.      Financial Assistance Program ...................................................... 7

                2.      Request for Contribution Awards and Counsel's Partial
                        Reimbursement of Costs ........................................................... 8

        C.      Preliminary Approval and Notice to the Class ........................................ 8

        D.      The Objections Received ...................................................................... 9

III.    ARGUMENT .................................................................................................... 10

        A.      The Applicable Legal Standard ............................................................ 10

        B.      This Settlement Is the Product of a Rigorous and Adversarial
                Process ............................................................................................... 10

        C.      The Settlement Is Fair, Reasonable and Adequate under *Grinnell* ........... 11

                1.      The Complexity, Expense and Likely Duration of Litigation ........... 12

                2.      The Class's Reaction to the Settlement ....................................... 13

                        a.      Responses to the Settlement ............................................ 13

                        b.      Dhirendra Patel .............................................................. 14

                3.      The Stage of the Proceedings and Extent of Discovery .................. 15

                4.      The Risks of Establishing Liability ............................................. 17

                5.      The Risks of Establishing Damages ............................................ 19

                6.      The Risks of Maintaining the Class Action Through Trial ............... 19

                7.      The Ability of Defendants to Withstand a Greater Judgment ........... 20

       8.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................. 20

IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED................................. 21

    A.    The Prerequisites of Rule 23(a) Are Satisfied .......................... 22

        1.   The Class Satisfies Numerosity ...................................... 22

        2.   Common Questions of Law and Fact Exist ....................... 22

        3.   Named Plaintiffs' Claims Are Typical of the Claims of the Class................................................................... 23

        4.   Named Plaintiffs Will Adequately Protect the Interests of the Class................................................................... 24

    B.    The Class May Be Properly Certified Under Rule 23(b)(1) and (b)(2) ................................................................. 24

    C.    The Requirements of Rule 23(g) Are Met ................................ 25

V.    THE FORMS AND METHODS OF NOTICE EMPLOYED SATISFY RULE 23 AND DUE PROCESS ........................................................... 26

VI.    NAMED PLAINTIFFS ARE ENTITLED TO THE REQUESTED CASE CONTRIBUTION AWARDS ................................................................. 26

VII.    THE EXPENSES INCURRED BY PLAINTIFFS' COUNSEL WERE REASONABLE AND NECESSARY ................................................... 28

VIII.    CONCLUSION.................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 22

*Banyai v. Mazur,*
  205 F.R.D. 160 (S.D.N.Y. 2002) ......................................................................... 23

*Bilello v. JP Morgan Chase Retirement Plan,*
  *et al.*, No. 07-cv-7379 (DLC) .............................................................................. 1

*Caridad v. Metro-North Commuter R.R.,*
  191 F.3d 283 (2d Cir. 1999) ........................................................................... 23, 26

*City of Detroit v. Grinnell,*
  495 F.2d 448 (2d Cir. 1974) ........................................................................... 10, 11

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ................................................................................... 22

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ................................................................................... 10

*Dornberger v. Metro. Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ......................................................................... 26

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
  89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................................. 23

*Esden v. Ret. Plan of First Nat. Bank of Boston,*
  182 F.R.D. 432 (D.Vt. 1998) ............................................................................... 25

*Hirt v. Equitable Ret. Plan for Employees, Managers and Agents,*
  533 F.3d 102 (2d Cir. 2008) ................................................................................. 3

*In re AOL Time Warner ERISA Litig.,*
  No. 02-8853, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ................................ 11

*In re AOL Time Warner, Inc.,*
  No. 02 Civ. 5575, 2006 WL 903236,  (S.D.N.Y. Apr. 6, 2006) ........................... 15, 19, 20, 25

*In re Austrian and German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................... 20

*In re Drexel Burnham Lambert Group, Inc.,*
  960 F.2d 285 (2d Cir. 1992)...................................................................... 24

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................... *passim*

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
  209 F.R.D. 94 (E.D. Pa. 2002)................................................................. 27

*In re JPMorgan Chase Cash Balance Litigation,*
  Master File No. 06-cv-0732 (DLC) ............................................................ 1

*In re Lloyd's Am. Trust Fund. Litig.,*
  No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................... 15

*In re Marsh ERISA Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................. 26

*In re Michael Milken and Assocs. Sec. Litig.,*
  150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................. 20

*In re Michael Milken and Assocs. Sec. Litig.,*
  150 F.R.D. 46 (S.D.N.Y. 1993) .............................................................. 19

*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 FR.D. 493 (S.D.N.Y. 1996) ............................................................. 21

*In re PaineWebber Ltd., P'ships Litig.,*
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................... 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
  164 F.R.D. 362 (S.D.N.Y. 1996) ............................................................. 26

*In re Sprint Corp. ERISA Litig.,*
  443 F. Supp. 2d 1249 (D. Kan. 2006) .................................................... 21, 26

*In re Warner Comms. Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y.1985)............................................................. 20

*In re WorldCom, Inc. ERISA Litig.,*
  No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)........................... 11, 12, 22

*Lindquist v. Bowen,*
  633 F. Supp. 846 (W.D. Mo. 1986) *aff'd*, 813 F.2d 884 (8th Cir. 1987................... 25

*Malchman v. Davis*,
    706 F.2d 426 (2d Cir.1983) ........................................................................... 11

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .......................................................................... 22

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ....................................................................................... 22

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) .................................................................. 20

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ....................................................................................... 14

*Perry v. FleetBoston Fin. Corp.*,
    229 F.R.D. 105 (E.D. Pa. 2005) .................................................................... 27

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
    818 F.2d 278 (2d Cir.1987) ........................................................................... 28

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................... 26

*Walling v. Brady*,
    No. 94-410, 1995 WL 447658 (D. Del. July 19, 1995) ................................. 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005), *cert. denied*, 125 S. Ct. 2277 (2005) ..................... 10, 11

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ........................................................................... 10

*White v. First Am. Registry, Inc.*,
    No. 04 Civ. 1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) .................... 12

## Other Authorities

Fed. R. Civ. P. 23 .................................................................................................. *passim*

## I.      INTRODUCTION

Plaintiffs Neil Aldoroty, John J. Berotti, Annette Marie Falchetti, Terri Melli, Norman Schomaker, and Perry Shapiro (the "Individual Cash Balance Plaintiffs") on their own behalf and on behalf of all similarly situated persons in the above-captioned *In re JPMorgan Chase Cash Balance Litigation*, Master File No. 06-cv-0732 (DLC) ("*Cash Balance* Action"), and plaintiff Frank J. Bilello (with the Individual Cash Balance Plaintiffs, "Plaintiffs") on his own behalf and on behalf of all similarly situated persons in the above-captioned *Bilello v. JP Morgan Chase Retirement Plan, et al.*, No. 07-cv-7379 (DLC) ("*Bilello* Action"), respectfully submit this Memorandum in support of their Motion for an Order:  (1) granting final approval of the proposed settlement described herein (the "Settlement"); (2) consolidating the Actions and certifying the class for the purpose of the Settlement (the "Class"); (3) approving case contribution awards to Named Plaintiffs and reimbursing reasonable out-of-pocket expenses to Plaintiffs' Counsel; and (4) entering Final Judgment.

The proposed Settlement comes after more than four years of intense litigation, substantial discovery, and following extensive arm's-length negotiations.  The Settlement was overseen and facilitated by the Court-appointed mediator, Magistrate Judge Theodore H. Katz, further demonstrating the absence of fraud or collusion.   Given the unpredictable outcome of the litigation and the possibility that the Class might not see any recovery, Plaintiffs' Counsel believe that this Settlement serves the interests of justice and is fair, reasonable and adequate to members of the Class.

## II.      BACKGROUND

### A.      Summary of the Actions

Both actions challenge certain provisions of the JPMorgan Chase Retirement Plan and its predecessor plans (collectively, the "Plan"), including:  (1) The Retirement And Family Benefits

Plan Of The Chase Manhattan Bank, N.A. (the "1989 Chase Plan"); (2) The Retirement Plan Of The Chase Manhattan Bank And Certain Affiliated Companies (the "1997 Chase Plan"); (3) The Cash Plan For Retirement Of Chemical Bank And Certain Affiliates (the "1989 Chemical Plan"); and (4) The Retirement Plan Of Chemical Bank And Certain Affiliated Companies (the "1993 Chemical Plan").  On October 27, 2009, the Court stayed both Actions after the parties agreed in principle to settle them.  On March 3, 2010, the Court issued an Order preliminarily approving the Settlement, preliminarily certifying a Class for settlement purposes, and approving distribution of the Notice of proposed Settlement to the Class.[1]

1.  *Cash Balance* Action

In *In re JPMorgan Chase Cash Balance Litigation*, the Individual Cash Balance Plaintiffs filed suit on January 31, 2006, challenging certain aspects of the Plan.  Linden Decl. at ¶10.  Defendants are the Plan and the Plan Administrator.  *Id.*  The JPMorgan Chase Retirement Plan is the successor in interest to numerous predecessor retirement plans.  *Id.*  The Consolidated Class Action Complaint, filed on June 23, 2006, asserted that the Plan violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, because, as a cash balance plan, it discriminates on the basis of age by reducing the rate of benefit accrual as its participants age (the "Age Claim").  *Id.* at ¶12.  This Complaint also alleged that Defendants did not provide sufficient notice that the conversion to a cash balance plan, or the subsequent amendments to the cash balance plans, caused a significant reduction in the rate of future benefit accrual (the "Notice Claims").  Linden Decl. at ¶12.

On May 30, 2007, following briefing and two rounds of oral argument, the Court issued an order certifying the Age Claim for class treatment as to participants in the Plan at any time between

---

[1]     Details regarding the procedural history and settlement negotiations for both Actions are contained in the Declaration of Plaintiffs' Counsel Peter S. Linden in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Settlement Class Certification, Case Contribution Awards to Named Plaintiffs and Reimbursement of Attorneys' Expenses ("Linden Decl.").

January 1, 1989 and January 31, 2006, and the Notice Claims for class treatment as to amendments to the Plan that became effective on or after January 1, 2002. *Id.* at ¶16. On March 17, 2008, the Court stayed the *Cash Balance* Action pending the decision of the Second Circuit regarding age discrimination claims against a cash balance pension plan in *Hirt v. Equitable Ret. Plan for Employees, Managers and Agents*. *Id.* In July 2008, the Second Circuit issued an opinion in *Hirt*, 533 F.3d 102 (2d Cir. 2008), finding that cash balance plans did not violate ERISA's prohibitions against age-based reductions in the rate of benefit accrual. *Id.* at ¶17. In light of the *Hirt* opinion, by motion of the parties, the Court dismissed the Certified Age Claim in the *Cash Balance* Action with prejudice on December 4, 2008. *Id.* at ¶19.

On October 21, 2008, Plaintiffs moved to amend class certification as to the Certified Notice Claims to include a notice claim related to the 1989 adoption of the cash balance plan by Chase, and to add former employees who have received lump-sum payouts of their retirement benefits to the class. *Id.* at ¶18. On January 6, 2009, the Court denied Plaintiffs' motion to include a 1989 Plan notice claim, but granted it with respect to the inclusion of former employees who had received lump-sum payouts of their retirement benefits. *Id.* at ¶20. In that same order, the Court ruled that plaintiffs who had previously received a lump sum payment of their pension benefit, included named plaintiffs Neil Aldoroty and Norman Schomaker, had standing to pursue their claims for statutory violations of ERISA. *Id.*

In late January 2009, after completing extensive fact and expert discovery for the Certified Notice Claims, the Individual Cash Balance Plaintiffs, acting on behalf of the Class, moved to voluntarily dismiss the Certified Notice Claims with prejudice, determining that even under the best result at trial, there would not be any meaningful remedy for members of the Certified Notice Class. Linden Decl. at ¶21. The Court entered a preliminary order for the voluntary dismissal of the Certified Notice Claims on February 2, 2009. *Id.* Notice of the voluntary dismissal was provided to

the Class members, and the Court held a fairness hearing on July 30, 2009.  *Id.*  On October 19, 2009, this Court granted the requested voluntary dismissal of the Certified Notice Claims.  *Id.* at ¶24.

The claims that remain in the *Cash Balance* Action are individual claims on behalf of the Individual Cash Balance Plaintiffs, alleging that Defendants did not provide sufficient notice that the Plan's conversion to a Cash Balance Formula effective January 1, 1989 (the "1989 Plan") and subsequent Plan amendments effective before January 1, 2002 caused a significant reduction in the rate of future benefit accrual (together with the claims asserted in the Proposed Complaint defined below, the "Remaining Cash Balance Claims").  *Id.* at ¶22.  On January 6, 2009, the Court denied the Individual Cash Balance Plaintiffs' request that notice claims relating to the 1989 Plan be certified for class treatment.  *Id.*

On July 21, 2009, the Individual Cash Balance Plaintiffs filed a motion to amend the Consolidated Class Action Complaint together with a proposed amended consolidated class action complaint (the "Proposed Complaint").  Linden Decl. at ¶23.  The Proposed Complaint asserts notice and fiduciary breach claims relating to (1) the 1989 Plan, and (2) a January 1, 1997 amendment to The Retirement Plan Of The Chase Manhattan Bank And Certain Affiliated Companies, to the extent the amendment affected former employees of Manufacturers Hanover Trust Company.  *Id.*  The Individual Cash Balance Plaintiffs also reserved the right to seek class certification and/or Plan-wide relief with respect to the claims asserted in the Proposed Complaint.  *Id.*  The motion was fully submitted to the Court on September 25, 2009.  *Id.*

The parties met before Magistrate Judge Katz to mediate a possible resolution of these actions on September 22, 2009 and October 23, 2009.  *Id.* at ¶25.  On October 26, 2009, the parties jointly requested that the Court stay both Actions because the parties had reached an agreement in principle to resolve them.  *Id.*  The Court granted the requested stay on October 27, 2009.  *Id.* at

¶26.  Because of the stay, the Court has not issued a decision with respect to Plaintiffs' July 21, 2009 motion to file the Proposed Complaint.  *Id.*

2.  *Bilello* Action

Bilello filed, on behalf of himself and a putative class, the initial Complaint on August 17, 2007.  Linden Decl. at ¶28.  Plaintiff Bilello then filed the First Amended Complaint in response to Defendants' motion to dismiss on December 21, 2007.  *Id.* at ¶29.  The initial Complaint and First Amended Complaint were subject to motions to dismiss.  *See id.* at ¶¶ 30, 33.

In *Bilello v. JPMorgan Chase Retirement Plan, et al.*, the current (Second Amended) complaint, filed on August 19, 2009, alleges on behalf of a class that the Plan violated ERISA in that:  (1) the Plan is "backloaded" because it does not provide for a minimum interest credit rate (the "Minimum Interest Rate Claim"); (2) the Plan is "backloaded" as a result of an alleged period of "wearaway" resulting from the implementation of the 1989 Chemical Plan (the "Wearaway Claim"); (3) Defendants did not provide sufficient notice that the 1989 Chemical Plan and subsequent Plan amendments caused a significant reduction in participants' rate of future benefit accrual (the "Bilello Notice Claim"); (4) Defendants did not provide adequate summary plan descriptions ("SPDs") and/or summaries of material modification relating to the 1989 Chemical Plan and subsequent Plan amendments (the "SPD Claim"); and (5) Defendants breached their fiduciary duties in connection with the conduct at issue in the Bilello Notice Claim and the SPD claim (the "Fiduciary Breach Claim").  Linden Decl. at ¶31.  The Complaint also asserts two individual claims based on the Plan's alleged failure to provide requested Plan documents (the "Individual Claims") to Mr. Bilello.  *Id.*

The Court has dismissed the Wearaway Claim and the Bilello Notice Claim in their entirety and the other claims in part.  *Id.* at ¶32.  The remaining putative class claims in the *Bilello* Action (the "Remaining Bilello Claims") are:  (1) the Minimum Interest Rate Claim to the extent it

concerns Plan participants who were grandfathered under the 1997 Chase Plan's cash balance formula after December 31, 2001; (2) the SPD Claim to the extent it alleges that SPDs relating to the 1989 Chemical Plan and the 1993 Chemical Plan failed to disclose reductions in rates of future benefit accrual and/or an alleged period of wearaway; and (3) the Fiduciary Breach Claim to the extent it alleges that Defendants misrepresented and/or failed to disclose that the 1989 Chemical Plan caused a significant reduction in participants' rate of future benefit accrual and a period of alleged wearaway.  The Court dismissed the Individual Claims except to the extent they allege that Defendants failed to provide formal Plan documents from the period before 2002 that were used to operate the Plan in 2007. *Id.*

Defendants filed their Answer to the Second Amended Complaint on September 14, 2009 to which Plaintiffs responded with a Motion to Strike Defendants' Affirmative Defenses on October 5, 2009.  *Id.* at ¶33.  In light of the October 29, 2009 stay, on December 16, 2009 the Court terminated Plaintiffs' Motion to Strike without prejudice to renewal.  *Id.*

Plaintiff Bilello has not yet moved for class certification, and the Court has not certified the *Bilello* Action as a class action.  *Id.* at ¶34.

**B.      Settlement Negotiations and Resulting Settlement Agreement**

The parties conducted personal and telephonic discussions and arm's-length negotiations with respect to a compromise and settlement of both Actions.  Linden Decl. at ¶36.  The parties participated in several mediation sessions before Magistrate Judge Theodore H. Katz.  *Id.*  These sessions were held on September 22, 2009 and October 23, 2009.[2]  *Id.*  These negotiations resulted in the parties agreeing in principle to a settlement.  *Id.* at ¶37.  During the next several months, the parties continued to engage in negotiations over the specific terms of the settlement.  *Id.*  These discussions and negotiations resulted in the execution of a Memorandum of Understanding on

---

[2]      The parties had also previously participated in a mediation conducted by the Honorable Douglas F. Eaton on December 28, 2008.

December 15, 2009, which set forth the principal settlement terms for the both Actions. On January 29, 2010, the Parties fully executed a Stipulation and Agreement of Settlement ("Settlement Agreement"). *Id.* at ¶¶38-40.

### 1. Financial Assistance Program

Defendants will make available to the Class a financial planning assistance program (the "Program") for a period of 12 months, beginning within 12 weeks after the effective date of the Settlement. Class members will have access to the Program via telephone, and will be allowed a maximum of four consultations per person. Linden Decl. at ¶42. Each consultation will be with a trained financial counselor at a third-party vendor selected by, but unaffiliated with, Defendants, and approved by Plaintiffs' Counsel, to manage the Program. *Id.* Samples of available topics include retirement and/or investment planning, cash flow/budgeting analysis, debt management, insurance needs, education funding, tax and estate planning, and understanding Medicare and Social Security. *Id.* Written materials will be available via a website on many of these topics, and personalized reports or action plans will be available for applicable topics following a counseling session (such as retirement gap analysis, cash flow/debt analysis, or insurance needs). *Id.*

These financial counseling sessions will be made available to approximately 100,000 class members. Defendants will make four counseling sessions available to class members. Comparable sessions are valued as high as $1,500 per person for comprehensive financial advice for up to one year. *Id.* at ¶43. For instance, USAA, a financial institution that caters to military personnel and their families, offers a comparable program for $1,500, entitling the person to comprehensive advice for a year, and USAA charges a one time fee of $150 for assistance dealing with a discrete financial topic. Linden Decl., Ex. A at pages 5-6. Thus, even if only a percentage of the approximately 100,000 Class members avail themselves of the four consultations being offered through this Settlement, the total value to the Class is in the millions of dollars. Linden Decl. at ¶44.

### 2. Request for Contribution Awards and Counsel's Partial Reimbursement of Costs

Plaintiffs' Counsel do not seek attorneys' fees for legal services rendered in the Actions. However, Plaintiffs' Counsel are seeking case contribution awards for each of the Named Plaintiffs, and a reimbursement of their out-of-pocket litigation expenses of $600,000, which represents only a portion of expenses over $630,000 incurred.[3]  *Id.* at ¶47.  Defendants have agreed not to oppose either of these requests, and to pay the amounts of the case contribution awards and expense application as awarded by the Court.  *Id.*  Plaintiffs' Counsel seek case contribution awards for (1) each of the Individual Cash Balance Plaintiffs of $7,500, and (2) Plaintiff Bilello of $5,000. *Id.* at ¶48.[4]

### C. Preliminary Approval and Notice to the Class

On March 3, 2010, this Court issued its "Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Class, Approving Notice Plan, and Setting Fairness Hearing Date" ("Order").  *Id.* at ¶¶41, 50.  In the Order, the Court preliminarily consolidated the Actions for settlement purposes, approved the Settlement Agreement and scheduled the Fairness Hearing for June 25, 2010.  *Id.*

Under the Order, Defendants were required to cause: (1) the Court-approved form of Notice to be mailed to the most recent mailing or e-mail address as reflected in Defendants' records (or, in the case of Class members who are not current employees, the most recent address available

---

[3]  An explanation of the reimbursement for expense and payment of case contribution awards to Plaintiffs is set forth in Linden Decl. ¶¶95-106.  *See also* Declaration of Amy Williams-Derry in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Settlement Class Certification, Case Contribution Awards to Named Plaintiffs and Reimbursement of Attorneys' Expenses ("Williams-Derry Decl."); Declaration of Joseph Weeden in Support of Named Plaintiffs' Motion for Final Approval of Class Action Settlement, Settlement Class Certification, Case Contribution Awards to Named Plaintiffs and Reimbursement of Attorneys' Expenses ("Weeden Decl."); and Affirmation of Edgar Pauk in Support of Plaintiffs' Request for Costs ("Pauk Affirm.).

[4]  Each of the Named Plaintiffs submitted declarations detailing their efforts in litigating these cases. They are attached to the Linden Declaration.  *See* Ex. D, Declaration of Neil Aldoroty; Ex. E, Declaration of John J. Berotti; Ex. F, Declaration of Annette Marie Falchetti; Ex. G, Declaration of Terri Melli; Ex. H, Declaration of Norman Schomaker; Ex. I, Declaration of Perry Shapiro; and Ex. J, Declaration of Frank J. Bilello.

through the United States Postal Service's National Change of Address database); and (2) publication of the Notice via PR Newswire. *Id.* at ¶51. Defendants' Counsel have advised Plaintiffs' Counsel that they will submit a declaration attesting to compliance with the Notice Plan. *Id.* In accordance with the Order, Plaintiffs created a dedicated website administered by Plaintiffs' Counsel to provide current information to all Class members and copies of all substantive pleadings and orders in the Actions. *Id.* at ¶52. The dissemination of Notice was intended to fully inform Class members of the lawsuit, class certification for settlement purposes, the proposed Settlement and the information they need to make informed decisions about their rights. *Id.* at ¶53. Given the nature of relief in the both Actions, all Class members will be eligible for the Program regardless of their actual Notice.

### D.      The Objections Received

Nearly 100,000 Notices were distributed to potential Class members. *Id.* at ¶58. According to the Notice, objections were to be filed with the Court and postmarked or faxed to Plaintiffs' Counsel no later than May 28, 2010. *Id.* at ¶59. Only 14 individuals provided responses to the proposed Settlement. *Id.* at ¶60; *see also* Linden Decl., Ex. B (collecting all 14 submissions alphabetically). Of these 14, three did not even state they were objecting to the Settlement. Linden Decl., Ex. B-1, Beck; Ex. B-2, DeVita; Ex. B-14, Wynn. Another three could arguably be categorized as objections.[5]   Only one of these, however, provided any indication as to what they meant, and that person is not a class member. *Id.*, Ex. B-8, D. Patel. The other two possible objections were conclusory and provided no supporting explanation. *Id.*, Ex. B-5, Hopton ("size of settlement); Ex. B-12, Smith ("dismissal of settlement").

---

[5]      Of the remaining 8 submission, six used the word "object" but their submissions appear to concern issues unrelated to the Settlement. Details about the objections are provided below.

## III.    ARGUMENT

### A.    The Applicable Legal Standard

Federal Rule of Civil Procedure 23(e) governs the settlement of a class action. Courts may approve class action settlements after proponents of the settlement have distributed adequate notice of the proposed settlement and the settlement has been the subject of a fairness hearing. Fed. R. Civ. P. 23(e)(1). A settlement is subject to approval if it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(1)(C), and "not a product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted).

Courts analyze a settlement's fairness, reasonableness and adequacy with reference to both "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato*, 236 F.3d at 85 (citation omitted). Courts may not engage in mere "rubber stamp approval" of the settlement, yet it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell*, 495 F.2d 448, 462 (2d Cir. 1974) ("*Grinnell*").

Further, courts should be "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied*, 125 S. Ct. 2277 (2005) (citation omitted). As the Second Circuit has long recognized, "[t]here are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (citations omitted).

### B.    This Settlement Is the Product of a Rigorous and Adversarial Process

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective

representation of the class's interests.'"  *D'Amato*, 236 F.3d at 85 (quoting *Weinberger*, 698 F.2d at 74); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *5 (S.D.N.Y. Oct. 18, 2004).   This inquiry into a settlement's procedural fairness helps to ensure that the settlement is not the product of collusion.   Intensive pre-negotiation discovery and motion practice and the presence of a mediator demonstrate the absence of fraud or collusion.  *See In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006) (internal citations omitted).

Those conditions are present here.  *See* Linden Decl. at ¶¶54-55.   The parties engaged in extensive discovery and motion practice, and worked with a court-appointed mediator, a federal magistrate judge, to reach a compromise and settlement.   Given the circumstances, this Settlement is entitled to a presumption of fairness.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).   The propriety of this presumption is also supported by the fairness of the Settlement terms.

C.      The Settlement Is Fair, Reasonable and Adequate under *Grinnell*

In evaluating the fairness, reasonableness, and adequacy of a settlement, the court must consider the "substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983) (citations omitted).   The Second Circuit has employed the following nine factors in making this determination:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see also Wal-Mart*, 396 F.3d at 117.

"In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citations omitted). In deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007). As discussed below, the Settlement the *Grinnell* factors.

### 1. The Complexity, Expense and Likely Duration of Litigation

In this case, the "complexity, expense and likely duration of the litigation," *Grinnell*, 495 F.2d at 463, counsels in favor of finding this proposed Settlement to be fair. Courts have recognized the complexity of ERISA beach of fiduciary duty claims. Indeed, there is a "general risk inherent in litigating complex claims such as these to their conclusion." *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6.

Litigating these cases have proven to be complex, long, and expensive. *See* Linden Decl. at ¶¶56-57. The parties have litigated the cases for four years. As evidenced by the extensive briefing, Plaintiffs' claims also raised numerous complex legal and factual issues under ERISA that have required extensive expert discovery and testimony. Plaintiffs' remaining claims also implicate complicated questions pertaining to Defendants' ERISA responsibilities, whether Defendants breached their fiduciary duties in connection with their notice obligations, and if so, whether and what remedy would flow to class members from any such breach. In particular, the law is unsettled as to whether – even if Plaintiffs prevailed in proving fiduciary breach – the remedy imposed upon Defendants would be monetary as opposed to merely procedural in nature.

In contrast, the proposed Settlement "would grant relief to all class members without subjecting them to the risks, complexity, duration and expense of continuing litigation." *In re Global Crossing*, 225 F.R.D. at 456-57.  Given the circumstances, a trial would likely be long, complex, and costly without assurance of any meaningful recovery.  This factor favors approval of the Settlement.

### 2.     The Class's Reaction to the Settlement

Another important aspect of evaluating the fairness of a proposed settlement is the reaction of the class members. *See Grinnell*, 495 F.2d at 463.  Pursuant to the Court-approved notice plan, Notice was to be distributed via First Class mail and emailed to more than 100,000 potential Class members on April 30, 2010, and via PR Newswire on the same day.  Linden Decl. at ¶58.  The Notice Program was appropriate under the circumstances, consistent with notice programs recently employed in similar class action litigation and complied with Fed. R. Civ. P. 23 and due process.  *Id.* at ¶59.  As set forth in the Preliminary Approval Order, the deadline for filing and serving objections was May 28, 2010.

Since Notice was distributed, Plaintiffs' Counsel have received and responded to over 640 telephone calls, and over 100 electronic or facsimile submissions regarding the Settlement. Williams-Derry Decl. at ¶10.  Only 14 responses that could be characterized as potential "objections" have been filed with the Court or lodged with Plaintiffs' counsel.  The submission of so few objections strongly favors the approval of the Settlement.

### a.     Responses to the Settlement

Of the 14 written submissions or potential "objections," two are change of address notifications (*see* Linden Decl., Ex. B-1, Ex. Beck; Ex. B-14, Wynn), and one is a statement of non-attendance at the final fairness hearing (*id.*, Ex. B-2, DeVita).  Of the remaining 11 submissions:

13

- three "objections" complain about the Plan's administration for reasons un-related to the instant litigation (*see id.*, Ex. B-4, Gosline[6]; Ex. B-10, Seaton; Ex. B-13, Winters);

- two submissions note blanket objections without any explanation – one to the "size of the settlement" and the other to the "dismissal of the Settlement" – but provide no other explanation (*id.*, Ex. B-5, Hopton; Ex. B-12, Smith);

- two objections have since been withdrawn (*id.*, Ex. B-9, R. Patel; Ex. B-7, Pignatelli-O'Neill) (*see also* Williams-Derry Decl. at ¶11 & Weeden Decl. at ¶11 (describing initial objections and their subsequent withdrawals));

- one objector is not actually a member of the class (Linden Decl., Ex. B-8, Ex. D. Patel)[7]; and

- three submissions seek exclusion from the class, but do not otherwise object to it (*id.*, Ex. B-3, Flanagan; Ex. B-6, Morales; Ex. B-11 Slemmer).[8]

### b.    Dhirendra Patel's Objection

Mr. Dhirendra Patel filed an objection on May 28, 2010.  Linden Decl., Ex. B-8, D. Patel. First, based on his years of his employment as described in his letter, Mr. Patel was never enrolled in a cash balance pension plan at JPMC, and is not a Class member.  Linden Decl. at ¶65. Counsel for Defendants has also confirmed with Plaintiffs' counsel that according to their records, Mr. Patel is not a class member.  Mr. Patel left employment with Chemical Bank in 1984, and does not appear to have been subject to the cash balance conversion that began in 1989.   Second, the events discussed in the 2007 letter attached to his submission would not apply to him, because he was not

---

[6]         To the extent Ms. Gosline objects to the settlement based on the fact that her "cash balance account has not been eligible for the minimum interest credit," she does not provide any context or explanation of her concerns. Furthermore, it does not appear that Ms. Gosline's concern was one litigated in the case, as she left active employment at Chase in 1995 and does not appear to have been grandfathered under the 1997 Chase Plan's cash balance formula after December 31, 2001.

[7]         Nor are DeVita and Flanagan members of the class.  *See* Linden Decl. at ¶60.

[8]         The Settlement does not provide for exclusion as the Settlement Class is being certified under Fed. R. Civ. P. 23(b)(1) and/or 23 (b)(2), and courts generally do not allow for opt-outs under these provisions.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 & n. 13 (1999).

employed with the Bank in 1989 when the conversion was made, and thus he would not be eligible for any recalculation of benefits based on a "prior service balance," which would have occurred between 1989 and 1991 for employees whose pensions were converted to cash balance.

Mr. Patel's submission also refers to Mr. Bilello's $10,000 settlement for his individual claims. Obviously, a settlement for individual claims would not apply to members of the class. To the extent Mr. Patel may have intended to complain about Mr. Bilello's requested $5,000 case contribution award, he apparently believes that all Class members should receive such a payment. However, the basis for the named plaintiffs' requested case contribution awards (set forth in more detail below) is based on their ongoing, active pursuit of this litigation on *behalf* of the Class. Other than the fair market value of the financial planning assistance service being offered to Settlement class members, there is no cash settlement available to either class members or interested third-parties, such as Mr. D. Patel, through this settlement.

### 3.   The Stage of the Proceedings and Extent of Discovery

The advanced stage of the litigation and extensive amount of discovery completed also weighs in favor of approval. *See In re Lloyd's Am. Trust Fund. Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *15 (S.D.N.Y. Nov. 26, 2002). "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *See In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006). The parties need not "have engaged in extensive discovery" as long as "they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make ... an appraisal' of the settlement." *Id.* (citations omitted).

As discussed above, both actions have been heavily litigated the last four years. Both actions have survived several motions to dismiss. There have also been several rounds of motions related to Class certification in the *Cash Balance* Action. *See, e.g.*, Linden Decl. at ¶67.

The parties also have engaged in extensive factual investigation. *Id*. at ¶¶68-76. While much of the discovery was technically in support of the *Cash Balance* Action, the Defendants, many of the witnesses, and many of the documents were overlapping between the two actions. For example, Defendants had agreed with Plaintiffs that the documents produced in the *Cash Balance* Action were relevant discovery in the *Bilello* Action. *Id.*

In addition to reviewing the combined document production of over 95,000 pages, Plaintiffs also reviewed public documents, including press releases, news articles, analyst reports, and regulatory filings. Plaintiffs' Counsel also reviewed and analyzed documents collected from numerous Plan participants, including Plaintiffs and other interested Class members. Plaintiffs served subpoenas for documents on third-party witnesses. Plaintiffs' Counsel took numerous depositions, including of fact, expert, and corporate witnesses. Plaintiffs' Counsel expended significant time and effort preparing for and attending these depositions. In addition, Plaintiffs' Counsel prepared for and defended the depositions of Named Plaintiffs Neil Aldoroty, John J. Berotti, Annette Marie Falchetti, Terri Melli, Norman Schomaker, and Perry Shapiro in the *Cash Balance* Action. In total, Plaintiffs' Counsel deposed and defended 19 different witnesses. Plaintiffs' Counsel had also met with and prepared Plaintiff Frank J. Bilello for his imminent deposition in the *Bilello* Action, when the Actions settled.

Plaintiffs' Counsel also consulted with and retained litigation consultants and experts to provide reports on various matters, including the linguistic and textual characteristics of the Plan documents distributed to participants, the rates of benefit accrual under the Plan, the Plan's compliance with age-based accrual rules under ERISA and the Internal Revenue Code, and

16

Plaintiffs' damages.  Counsel for both parties attended mediation sessions, and various dispositive motions have been briefed, argued, and decided.  Thus, this factor is satisfied.

### 4.        The Risks of Establishing Liability

This factor requires the court to balance the benefits of immediate recovery promised by the proposed Settlement against the risks attendant to further litigation.  *See Grinnell*, 495 F.2d at 463.  Plaintiffs believe that their claims are well-founded and that they ought to prevail on the merits.  Linden Decl. at ¶¶77-83.  Defendants deny wrongdoing.  Based on the Court's rulings and developments in the case law, the remaining claims in the *Cash Balance* Action and the remaining class claims in the *Bilello Action* faced significant risk both on the merits and procedurally.

As a result, there was significant risk whether, if litigation continued, there would be any substantive remedy available to Plaintiffs.  For example, the remedy for a procedural violation, such as failing to provide a summary plan description SPD that complied with ERISA, is likely to have been only procedural in nature, requiring the provision of a compliant SPD.  Such a remedy would not have provided additional benefits to Plaintiffs and the Class.  Similarly, the extent of any remedy available to Plaintiffs and the Class based on the alleged breach of fiduciary duty claims, even if successful, was uncertain under the developing case law.  There is also the risk of a battle of experts, for instance, with regard to the complex actuarial analysis that would be required in these actions.  And Defendants would surely challenge Plaintiffs' experts at summary judgment or trial.  There was also a significant risk whether, if litigation continued, there would be any substantive remedy available to other, similarly-situated Plan participants in the *Cash Balance* Action, or whether the Court would certify a class in the *Bilello* Action.

Moreover, given that the parties contest whether Plaintiffs can amend the Complaint in the *Cash Balance* Action, there is no guarantee that the Court would grant Plaintiffs leave to amend.  And even if it did, the Proposed Complaint would be subject to renewed motions to dismiss.

Defendants would likely argue, *inter alia*, that the claims in the Proposed Complaint are time-barred and fail to state a claim upon which relief could be granted.  Furthermore, Defendants would argue that Plaintiffs cannot show that the Plan amendments and Notices were misleading, that the Notices at issue contained any misrepresentations in fact, or that Plaintiffs relied upon or were prejudiced by the alleged breaches.

Likewise in the *Bilello* Action, Defendants would claim that Plaintiffs cannot show reliance on any alleged misstatement or omission of Defendants, that they were prejudiced or harmed as a result of any inadequate disclosure, and that any purported inadequacies in the disclosure constituted harmless error or were cured by other adequate disclosures.

As part of their evaluation of the Settlement, Plaintiffs and their counsel considered (a) the benefits that the Class members will receive from Settlement compared with the likely benefits available if the case were litigated to a judgment, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement Agreement to be consummated as provided by the terms of this Stipulation.  Plaintiffs and Plaintiffs' Counsel believe the Settlement provides certainty of prompt benefits to the Class, while continued litigation encompasses several potential negative factors, such as: (a) significant risk of the *Cash Balance* Action and *Bilello* Action being dismissed in whole or in part, (b) delayed benefits, if any, for pensioners, (c) an award of relief that might only be procedural in nature, but which might not increase benefits, (d) the uncertainty of being able to secure relief for anyone other than the Named Plaintiffs if the Court did not certify a class, and (e) the uncertainty of the remedy for Plaintiffs' breach of fiduciary duty allegations based on the alleged failure to disclose full and accurate Plan information.

Accordingly, based on the availability of a Settlement that offers substantial value to Plaintiffs and the Class by providing concrete financial planning services, information, and

resources, Plaintiffs and their counsel believe that the Settlement is fair, reasonable and adequate to Plaintiffs and the Class, and in their best interests.

### 5.        The Risks of Establishing Damages

Though the parties have not exchanged expert reports on damages, the presentation of expert testimony on complex damage issues creates significant risks that Plaintiffs avoid with this Settlement. *See In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement amounting to small percentage of total damages sought because magnitude of damages often becomes "battle of experts ... with no guarantee of the outcome"). Plaintiffs could expect a vigorous challenge to their ability to obtain damages (as noted above) and to damage calculation. And quantifying damages could be difficult where the remedy is for a procedural violation as is the case here. "In short, the legal and factual complexities and uncertainties of [proving] the ERISA damages case also militate in favor of settlement." *In re Global Crossing*, 225 F.R.D. at 460.

### 6.        The Risks of Maintaining the Class Action Through Trial

This case is appropriate for class certification, and many similar ERISA cases have been certified. *See*, *infra* Part IV. In addition to satisfying the Rule 23 requirements, certification provides procedural advantages that enable the efficient litigation of Plaintiffs' claims asserted in this case. That said, there is always the risk that class certification can be denied and, if granted, reviewed or modified at any time before trial. Indeed, this Court has already denied Plaintiffs' motion to amend class certification in the *Cash Balance* Action on January 6, 2009. Linden Decl. at ¶84. Thus, the uncertainty surrounding class certification supports approval of the Settlement. *See In re AOL Time Warner,* 2006 WL 903236, at *12 (finding that risk of plaintiffs not succeeding in certifying class supported approval of settlement).

### 7.      The Ability of Defendants to Withstand a Greater Judgment

"This factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship."  *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12 (citing *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y.1985)).   However, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Thus, even if Defendants could withstand a larger judgment, "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement." *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006).

### 8.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The inquiry into whether the proposed settlement falls within the range of reasonableness "is not susceptible of a mathematical equation yielding a particularized sum," *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993), but rather "must be judged in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) (internal quotation marks omitted), *aff'd*, 236 F.3d 78 (2d Cir. 2001).  Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Grinnell*, 495 F.2d at 455 & n. 2.

The Settlement is well within the range of reasonableness.  Linden Decl. at ¶84.  As discussed above, the Plaintiffs face several significant obstacles in proving Defendants' liability, the necessary damages, and surviving any further dispositive motions and obtaining class certification.  Given these difficulties, the proposed settlement is within a range that is reasonable.

The Settlement provides real value to the Class.  Indeed, the Settlement is similar to those approved in other cases.  For instance, *In re Sprint Corp. ERISA Litig.*, the district court approved a settlement that included two one-hour meetings with third-party financial advisors. 443 F. Supp. 2d 1249, 1270-71 (D. Kan. 2006).  The district court valued these two, one-hour meetings at $350 in total.  *Id*.  The settlement covered approximately 67,000 class members.  *Id*.  The court estimated that if only one-third of the class members took advantage of these sessions, the benefit to the class would be nearly $8 million.  *Id*.  Under *Sprint*, the value of the four sessions being offered here are at least $700 per person.  Thus, even if only one-third of the Class avails itself of this benefit, as the Court hypothesized might be the case in *Sprint*, the financial planning program would still conservatively be valued at several million dollars.  And as noted above, one financial service provider charges $1,500 for such services or $150 per topic, making the instant Settlement even more valuable than under the standard employed in *Sprint*.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In its Order for Notice and Hearing, this Court conditionally certified the following Class for settlement purposes under Rule 23(a), (b)(1) and (b)(2):

> All individuals who have or at any time had a vested benefit in the JPMorgan Chase Retirement Plan and/or its predecessor plans and, at any time prior to January 1, 2002, were subject to a *Cash Balance Formula* in one or more of the following plans:  (1) The Retirement And Family Benefits Plan of The Chase Manhattan Bank, N.A., (2) the Retirement Plan of The Chase Manhattan Bank And Certain Affiliated Companies, (3) the Cash Plan for Retirement of Chemical Bank and Certain Affiliates, and (4) the Retirement Plan of Chemical Bank And Certain Affiliated Companies.

While the Parties have stipulated to conditional certification of the Class for settlement purposes, it is subject to review and final certification by the Court.  *Weinberger*, 698 F.2d at 73.  The Court should assure itself that certification is proper under Rules 23(a) and (b).  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 FR.D. 493, 504 (S.D.N.Y. 1996).

Plaintiffs' ERISA claims charge the Defendants with the kind of claim that lies at the core of Rule 23 jurisprudence. *See, e.g.*, *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004) (certifying for class treatment similar ERISA claims); Fed. R. Civ. P. 23(b)(1)(B), adv. comm. notes, 1966 amend. Moreover, Congress embraced the principle that ERISA claims should be brought in a representative capacity. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). To proceed as a class action, the litigation must satisfy four prerequisites of Rule 23(a). And it must satisfy one of the three requirements under Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the prerequisites of Rule 23(a), (b)(1) and (b)(2) are met.

### A.    The Prerequisites of Rule 23(a) Are Satisfied

#### 1.    The Class Satisfies Numerosity

A class is generally numerous when there are at least 40 members involved; above that number, individual joinder of all members becomes "impracticable," and numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is easily met here. The proposed class is in the tens of thousands and given the size and corporate history of JPMorgan Chase, it is assumed that the large number of potentially affected individuals will not be disputed. Indeed, Notice was sent to 100,000 active, retired or separated participants in the Plan.

#### 2.    Common Questions of Law and Fact Exist

The requirement of common factual or legal questions under Rule 23(a)(2) is not demanding and does not require an identity of claims or facts among class members; instead, "[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions. "In general, the question of defendants' liability for ERISA violations is common to

all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

Here, there are several common questions of law and fact with respect to each Class member, including: (1) whether the Plan amendment caused a significant reduction in the rate of benefit accrual; (2) whether Defendants complied with ERISA; (3) whether Defendants breached their fiduciary duties; (4) whether Defendants provided sufficient notice under ERISA; (5) whether Defendants caused class-wide injury; and (6) whether the Class is entitled to injunctive and equitable relief.  Plaintiffs' burden under Rule 23(a)(2) is satisfied.

### 3. Named Plaintiffs' Claims Are Typical of the Claims of the Class

Typicality "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (citation omitted).  For the plaintiffs' claims to be typical, the disputed issue of law or fact must "'occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class.'"  *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (internal quotation omitted).  Expressed another way, "the proper inquiry is whether other members of the class have the same or similar injury" and "whether the action is based on conduct not special or unique to the named plaintiffs."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

Here, the Class representatives' claims are typical of the Class. All representatives were employees or participants in the Plan during the Class Period, sustained injury from Defendants' failure to provide adequate Notice under ERISA and from Defendants' breaches of fiduciary duty. They have "receive[d] the same lesser benefit as others in the putative class" – they do not "exhibit unique circumstances which will receive inordinate emphasis in the litigation and thus prevent [the

common] claims from being pursued with equal vigor." *Walling v. Brady*, No. 94-410, 1995 WL 447658, at *4-5 (D. Del. July 19, 1995).

### 4.     Named Plaintiffs Will Adequately Protect the Interests of the Class

The representative party in a class action should fairly and adequately protect the interests of the class. Historically, the adequacy of representation inquiry has had two components: (1) whether there is a potential conflict between the named plaintiff and absent class members, and (2) whether class counsel is "'qualified, experienced, and generally able to conduct the litigation.'" *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted).

Plaintiffs and the absent Class members suffered the same type of alleged harm arising out of the Defendants' conduct.  They were or are employees of Defendants who participated in the Plan and whose accrued benefits or pension benefits are based in whole or in part on the Plan's cash balance formula in effect during the Class Period.  Thus, they rely upon the same causes of action and legal theories.  As a result, there are no conflicts of interest between the Plaintiffs and the other Class members.  Plaintiffs have also retained counsel with significant ERISA class action litigation experience.  Accordingly, the Class will be adequately represented.

### B.     The Class May Be Properly Certified Under Rule 23(b)(1) and (b)(2)

The proposed Class is certifiable under Rule 23(b)(1) and (b)(2).  To satisfy Rule 23(b)(1), Plaintiffs must show that the prosecution of separate actions would create either (A) the risk of "inconsistent or varying adjudications with respect to individual class members," Fed. R. Civ. P. 23(b)(1)(A), or (B) the risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B).  To satisfy Rule 23(b)(2), Plaintiffs must show that Defendants have acted or refused to act on grounds that apply generally to the Class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. *See* Advisory Committee Notes, 1966 amend., (Rule 23(b)(2) "is intended to reach situations where a party has taken action … with respect to a class, and final relief of an injunctive nature … settling the legality of the behavior with respect to a class as a whole, is appropriate.").

Courts within this circuit have certified numerous Rule 23(b)(1) and (b)(2) classes in ERISA cases that involved similar cash balance and breach of fiduciary duty claims. *See, e.g.*, *Esden v. Ret. Plan of First Nat. Bank of Boston*, 182 F.R.D. 432, 434 (D.Vt. 1998) (certifying class under Rule 23(b)(1) and (b)(2) for cash balance claims but granting summary judgment to defendant), *rev'd*, 229 F.3d 154 (2d Cir. 2000) (reversing grant of summary judgment); *see, e.g.*, *In re AOL Time Warner*, 2006 WL 2789862 (certifying class for breach of fiduciary duty under Rule 23(b)(1)), at *3-4; *In re Global Crossing*, 225 F.R.D. at 453 (same).

Here, the claims at issue as to each Plaintiff would be dispositive of the claims of the whole, and Defendants' conduct affected all participants in the Plan during the Class Period.  Plaintiffs seek to enforce their common statutory rights regarding Defendants' benefit plans and seek injunctive relief and equitable relief.  This is "precisely what the Rule intended."  *Lindquist v. Bowen*, 633 F. Supp. 846, 861 (W.D. Mo. 1986) *aff'd*, 813 F.2d 884 (8th Cir. 1987).  Thus, Plaintiffs satisfy Rule 23(b)(1) and (b)(2).

### C.      The Requirements of Rule 23(g) Are Met

The requirements of Rule 23(g) are met because Plaintiffs' Counsel have provided adequate representation to the Class.  They have many years of experience in ERISA law and in litigating complex class actions.  *See, e.g.*, Linden Decl. at ¶¶86-90; Linden Decl., Ex. C; Williams-Derry Decl., Ex. A; Weeden Decl., Ex. A; Pauk Affirm., Ex. A.  In litigating these matters, they have prepared a detailed and thorough Complaint, responded to multiple motions to dismiss, moved for class certification, conducted extensive discovery, and engaged in hard-fought and ultimately

successful settlement negotiations with Defendants.  Their efforts in prosecuting this case, together with their background and experience in ERISA class action litigation, satisfy the requirements of Rule 23(g).

## V.   THE FORMS AND METHODS OF NOTICE EMPLOYED SATISFY RULE 23 AND DUE PROCESS

To satisfy due process, notice to the class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (citation omitted).  To satisfy Rule 23, "[f]or non opt-out cases, such as the ERISA Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct….'" *Global Crossing*, 225 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(c)(2)(A)).

As discussed above, the forms and methods of Notice satisfies due process considerations and meets Fed. R. Civ. P. 23(c)(2) and (e)(1).

## VI.   NAMED PLAINTIFFS ARE ENTITLED TO THE REQUESTED CASE CONTRIBUTION AWARDS

Courts recognize the need to compensate class representatives for their work on behalf of a class which has benefited from their representation. *See*, *e.g.*, *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001). Such awards reimburse class representatives who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150-51 (S.D.N.Y. 2010) (awarding $15,000 to each of the named plaintiffs); *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (granting award of $15,000 to class representative); *see also Sprint*, 443 F. Supp. 2d at 1271 (approving an award of $5,000 to each of named plaintiffs).  Incentive awards for named plaintiffs are also found appropriate even where there are *de minimis* or no cash payouts to the class.  *See, e.g., Perry v. FleetBoston Fin.*

*Corp.*, 229 F.R.D. 105, 118-20 (E.D. Pa. 2005) (awarding $5,000 in incentive fees to each of three plaintiffs where settlement included, *inter alia*, two free credit reports and credit scores and $50,000 *cy pres* donation); *see also In re Ikon Office Solutions, Inc., Sec. Litig.*, 209 F.R.D. 94, 98-99 (E.D. Pa. 2002) (approving settlement and contribution awards of $5,000 for each named plaintiff in an ERISA case where the primary relief obtained was removing reallocation of match contribution restrictions, with no cash payment to the class). In this case, Plaintiffs request modest case contribution awards for (1) each of the Individual Cash Balance Plaintiffs of $7,500, and (2) Plaintiff Bilello of $5,000.[9]

The Named Plaintiffs have been active in this litigation. Linden Decl. at ¶¶91-94. They have not merely observed from the sidelines. Plaintiffs Aldoroty, Berotti, Marie Falchetti, Terri Melli, Schomaker, Shapiro and Bilello have been hands-on participants in this litigation, expending significant amounts of their own time to benefit the Class. *See* Linden Decl., Exs. D-J Named Plaintiffs' Declarations. Named Plaintiffs investigated the claims and retained counsel to determine whether a case was worth pursuing. Each has provided Plaintiffs' Counsel with valuable factual information necessary to support the claims and defend against Defendants' affirmative defenses. In the early stages of these actions, Named Plaintiffs assisted Plaintiffs' Counsel investigate the claims and defenses by supplying first-hand factual knowledge about the changes to the Plan and affects of those changes. Throughout the four-year litigation, Named Plaintiffs communicated regularly with Plaintiffs' Counsel, supplying additional information as requested. For instance, they responded to document requests and interrogatories, and reviewed and approved pleadings. The Named Plaintiffs also spent considerable time with Plaintiffs' Counsel preparing for depositions, taken by Defendants, and they traveled to and sat for full-day depositions. Named Plaintiffs also

---

[9]     Plaintiffs' Counsel request a lower case contribution award for Plaintiff Frank Bilello ($5,000 rather than $7,500) because although he met with counsel to prepare for his deposition, his deposition did not actually take place prior to the litigation stay  resulting from the settlement of the actions.

attended hearings.   And they assisted Plaintiffs' Counsel prepare for mediation sessions and provided valuable insight during the mediation session that they attended.   Given these efforts, the amount requested is reasonable.   Accordingly, Plaintiffs should be compensated for their efforts on behalf of the Class, which has benefited from their representation.

## VII.   THE EXPENSES INCURRED BY PLAINTIFFS' COUNSEL WERE REASONABLE AND NECESSARY

The Notice of Settlement also informed Class members that Plaintiffs' Counsel would seek reimbursement of up to $600,000 for their expenses incurred in the prosecution of this case.   The Settlement Agreement provides that Defendants do not oppose this request and will pay the amount approved by the Court.   Linden Decl. at ¶¶95-106.   Plaintiffs' Counsel have litigated these actions on a contingent-fee basis.   Under such an arrangement, they have had a strong incentive to keep expenses reasonable.   In doing so, Plaintiffs' Counsel still incurred out-of-pocket expenses in excess of $630,803.26.   *Id*. at ¶¶102-106.   Thus, the request for reimbursement of $600,000 reflects partial compensation of the Actions' actual expenses.

Generally, courts may award reimbursement to counsel for "expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (citation omitted).   Costs were generated in connection with consulting and securing experts and consultants, deposing witnesses, traveling, and other incidental expenses. *See* Linden Decl. at ¶¶96-106; Williams-Derry Decl. at ¶¶7-8; Weeden Decl. at ¶¶7-8; Pauk Affirm. at ¶10.   Such costs are reimbursable. *In re Global Crossing*, 225 F.R.D. at 468.   And an award of expenses are warranted here where Plaintiffs' Counsel are not seeking attorneys' fees, notwithstanding the fact that the value of the Settlement to the Class could easily be justified as tens, if not hundreds, of millions of dollars.

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order: (1) granting final approval of the proposed Settlement; (2) consolidating and certifying the Class for the purpose of the Settlement; (3) approving case contribution awards to Plaintiffs and reimbursing Plaintiffs' Counsel for out-of-pocket expenses incurred in litigating the Actions; and (4) entering Final Judgment.

RESPECTFULLY SUBMITTED this 17th day of June, 2010.

/s/ Peter S. Linden
Peter S. Linden
Christopher S. Studebaker
KIRBY MCINERNEY LLP
825 Third Avenue
16th Floor
New York, New York 10022
Telephone: (212) 371-6600

/s/ Amy Williams-Derry
Lynn Lincoln Sarko
Amy Williams-Derry
Derek W. Loeser
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone:  (206) 623-1900

/s/Joseph H. Meltzer
Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
BARROWAY TOPAZ KESSLER MELTZER
CHECK LLP
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone:  (610) 667-7706

Co-Lead Counsel for Plaintiffs and the Class

Edgar Pauk, Esq.
27 Eighth Avenue
Park Slope
Brooklyn, New York 11217

Telephone:  (347) 529-4604

*Counsel for Plaintiffs*